UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

RONALD SPRAGUE,

      Plaintiff,

v.                   CASE No. 8:13-CV-576-T-TGW

CAROLYN W. COLVIN,[1]
Acting Commissioner of Social Security,

      Defendant.

---

O R D E R

The plaintiff in this case seeks judicial review of the denial of his claims for Social Security disability benefits and supplemental security income payments.[2] Because the decision of the Commissioner of Social Security is supported by substantial evidence and does not contain reversible error, the decision will be affirmed.

---

[1] On February 14, 2013, Carolyn W. Colvin became the Acting Commissioner of Social Security and should, therefore, be substituted for Commissioner Michael J. Astrue as defendant in this action. See 42 U.S.C. 405(g); Fed.R.Civ.P. 25(d).

[2] The parties have consented in this case to the exercise of jurisdiction by a United States Magistrate Judge (Doc. 14).

I.

The plaintiff, who was sixty-one years old at the time of the administrative hearing and who has some college education, has worked as an executive vice president, a president, an operations manager, a construction worker, a telemarketer, and a sales representative (Tr. 44, 45, 67, 279). He filed claims for Social Security disability benefits and supplemental security income payments, alleging that he became disabled due to mental illness, heart disease, chronic obstructive pulmonary disease ("COPD"), and arthritis (Tr. 184). The claims were denied initially and upon reconsideration.

The plaintiff, at his request, then received a de novo hearing before an administrative law judge. The law judge found that the plaintiff has severe impairments of "history of coronary artery bypass grafting, history of sarcoma of the left upper extremity, arthritis, and hypertension" (Tr. 21). She concluded that, with these impairments, the plaintiff (Tr. 25):

> has the residual functional capacity to perform light
> work as defined in 20 CFR 404.1567(b) and
> 416.967(b) except the claimant can only frequently
> climb ramps and stairs; can only frequently
> balance, stoop, kneel, and crouch; and can never
> crawl or climb ladders, ropes, and scaffolds. In
> addition, the claimant is limited to occasional

overhead reaching with the left upper extremity
and must avoid concentrated exposure to hazards
and machinery.

The law judge determined that, despite these limitations, the plaintiff could

return to his past work as an executive vice president and a sales

representative (Tr. 28). The Appeals Council let the decision of the law judge

stand as the final decision of the Commissioner.

## II.

In order to be entitled to Social Security disability benefits and

supplemental security income, a claimant must be unable "to engage in any

substantial gainful activity by reason of any medically determinable physical

or mental impairment which ... has lasted or can be expected to last for a

continuous period of not less than twelve months." 42 U.S.C. 423(d)(1)(A),

1382c(a)(3)(A). A "physical or mental impairment," under the terms of the

Social Security Act, is one "that results from anatomical, physiological, or

psychological abnormalities which are demonstrable by medically acceptable

clinical and laboratory diagnostic techniques."   42 U.S.C. 423(d)(3),

1382c(a)(3)(D). The Act provides further that a claimant is not disabled if he

is capable of performing his previous work. 42 U.S.C. 423(d)(2)(A), 1382c(a)(3)(B).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence. 42 U.S.C. 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971), quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938). Under the substantial evidence test, "findings of fact made by administrative agencies ... may be reversed ... only when the record compels a reversal; the mere fact that the record may support a contrary conclusion is not enough to justify a reversal of the administrative findings." Adefemi v. Ashcroft, 386 F.3d 1022, 1027 (11th Cir. 2004) (en banc), cert. denied, 544 U.S. 1035 (2005).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. Grant v. Richardson, 445 F.2d 656 (5th Cir. 1971). Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by

substantial evidence.  <u>Celebrezze</u> v. <u>O'Brient</u>, 323 F.2d 989, 990 (5th Cir. 1963).

Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to reweigh the evidence, but is limited to determining whether the record as a whole contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled.  However, the court, in its review, must satisfy itself that the proper legal standards were applied and legal requirements were met.  <u>Lamb</u> v. <u>Bowen</u>, 847 F.2d 698, 701 (11th Cir. 1988).

### III.

The plaintiff challenges the law judge's decision on two grounds related to his mental impairments.[3]  Neither of these contentions warrants reversal.

The plaintiff first attacks the law judge's finding that his mental impairments are not severe (Doc. 15, p. 4).  Specifically, the plaintiff asserts that this finding "is not supported by substantial evidence, in light of the

---

[3]The plaintiff makes no argument concerning his physical condition.  Consequently, any such contention is deemed forfeited (Doc. 13, p. 2).

course of mental health treatment and plaintiff['s] psychiatrist's medical opinion of significant mental limitations, in particular, social functioning limitations caused by chronic anxiety" (id.).

The regulations define a non-severe impairment as one that "does not significantly limit [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. 404.1521(a), 416.921(a). The court of appeals has stated that "[a]n impairment can be considered as not severe only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." Brady v. Heckler, 724 F.2d 914, 920 (11ᵗʰ Cir. 1984).

The law judge acknowledged in the decision the plaintiff's "medically determinable mental impairments," including major depressive disorder with anxiety, and explained that she did not find these impairments to be severe (Tr. 22). In doing so, the law judge recognized, and applied, the proper standards for a non-severe impairment (Tr. 20).

In this respect, the law judge made findings regarding the four broad functional areas used in considering mental disorders. Thus, the law

judge found that the plaintiff had only a mild limitation in activities of daily living; a mild limitation in social functioning; a mild limitation in concentration, persistence or pace; and no episodes of decompensation of extended duration (Tr. 23-24). The regulations state that such findings generally result in the conclusion that a mental impairment is not severe. 20 C.F.R. 404.1520a(d)(1), 416.920a(d)(1).

The plaintiff challenges the law judge's findings that he is only mildly limited in the areas of social functioning and concentration, persistence or pace (Doc. 15, pp. 4-10). With regard to these functional areas, the law judge stated (Tr. 23):

> The next functional area is social functioning, in which the claimant has mild limitation. The claimant admitted that he spends time with others on a daily basis, goes to alcoholics anonymous (AA) meetings on a regular basis, and enjoys social activities such as "watching sports with friends." In addition, he reported no problems getting along with family, friends, neighbors, or others; no need for reminders or accompaniment when going places; and no difficulty socializing at home or with neighbors (Exhibits 6E, 17E). Therefore, the claimant's own report offers little evidence of any social limitations. Moreover, Dr. [Joel] Gleason routinely reported few social limitations, aside from an opinion recorded on a generic check-box

form in May 2010, in which he indicated that the claimant had moderate difficulties in this area (Exhibit 22F).   However, Dr. Gleason rarely indicated any social limitations in his treatment notes, aside from the claimant's reports of anxiety. In that regard, it appears that this "moderate" rating was attributed to the claimant's subjective reports, rather than any medical evidence.   Therefore, the undersigned has afforded this opinion little weight. Accordingly, the undersigned has rated the claimant's limitations in social functioning as mild.

The third functional area is concentration, persistence or pace, in which the claimant has mild limitation.  The claimant acknowledged the ability to pay bills, count change, and handle a checking account.   Although he denied using a savings account, he indicated that this was due to a lack of income, rather than any mental impairment.   In addition, the claimant reported engaging in hobbies such as reading, which inherently involves the ability to maintain focus for extended periods. Moreover, he acknowledged that he follows written instructions "fairly well." The claimant did allege difficulties in this area, such as short attention span, confusion, and poor memory, but the record offers little evidence to support any limitations (Exhibit 6E, 17E).  Again, the claimant's treating psychiatrist, Dr. Gleason, reported few, if any, limitations in this area.   His treatment notes throughout 2009 and 2010 indicated that the claimant was oriented in all spheres, had logical thought processes, and intact judgment and insight (Exhibits 8F, 9F, 31F, 32F). Therefore, the record contains little evidence of any limitations in this

-8-

area. Accordingly, the undersigned has rated the claimant's difficulties in maintaining concentration, persistence, or pace as mild.

The law judge's findings on these areas are amply supported by the record. Notably, the law judge cited to specific evidence in the record. The law judge added that "mental health treatment records show that the claimant was receiving vocational rehabilitation in October 2009, and that he planned on returning to work until he was able to retire at age 62" (Tr. 26). Further, two nonexamining reviewing psychologists opined that the plaintiff has only mild difficulties in these areas (Tr. 472, 504).

The plaintiff suggests that a finding of severe mental impairments is supported by the medical records of Dr. Hector Corzo, a psychiatrist (Doc. 15, pp. 5-6). In this regard, the plaintiff notes, among other things, that Dr. Corzo's diagnosis included major depression, recurrent (id., p. 6; see Tr. 404). However, a mere diagnosis of an impairment is not sufficient to establish disability. McCruter v. Bowen, 791 F.2d 1544, 1547 (11th Cir. 1986). Rather, it is necessary to show functional limitations from the impairments. Moore v. Barnhart, 405 F.3d 1208, 1213 n.6 (11th Cir.

2005).   Significantly, Dr. Corzo provided no opinion setting forth any functional limitations from the plaintiff's mental condition.

In further support of his contention, the plaintiff points to his hearing testimony, supplemental anxiety questionnaires, and function report (Doc. 15, pp. 8-9).   Importantly, however, the law judge found that the plaintiff was not fully credible (Tr. 26), and the plaintiff raises no challenge to that credibility determination.

The plaintiff contends that the law judge's finding of a mild limitation in social functioning is contradicted by the opinion of Dr. Gleason, a treating psychiatrist (Doc. 15, p. 9). In a Functional Limitation Form dated May 6, 2010, Dr. Gleason marked that the plaintiff has moderate difficulties in maintaining social functioning (Tr. 707).   With respect to the area of concentration, persistence or pace, Dr. Gleason wrote, "I do not know" (id.).

Opinions from treating physicians should be given substantial or considerable weight unless there is good cause for not doing so. Phillips v. Barnhart, 357 F.3d 1232, 1240 (11th Cir. 2004).  Good cause exists when the treating physician's opinion is not bolstered by the evidence, the evidence supports a contrary finding, or the opinion is conclusory or inconsistent with

the physician's own medical records.  Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997).

The law judge considered Dr. Gleason's opinion, but gave it little weight.  Thus, as indicated, the law judge explained that the opinion was simply set forth on a "generic check-box form," that social limitations were rarely indicated in Dr. Gleason's treatment notes, and that the opinion appeared to be based on the plaintiff's subjective reports rather than medical evidence.  The law judge also said (Tr. 24):

> [T]he undersigned notes that Dr. Gleason regularly reported that the claimant's mood was "good," that his medications were "working well," and that he [h]as maintained a positive attitude. Moreover, the claimant ... did not experience "any significant side effects from his medications" and routinely denied any suicidal ideations, hallucinations, or delusions. Lastly, Dr. Gleason reported that the claimant was maintaining his sobriety (Exhibits 8F, 9F, 25F, 31F, 32F).

These reasons support the law judge's decision to discount Dr. Gleason's opinion of moderate difficulties in social functioning.  In other words, the law judge has shown good cause for not giving that opinion considerable or substantial weight.

Significantly, Dr. Gleason's questionnaire was devoid of any meaningful explanation or justification for the limitation in social functioning. In fact, the only comment on the form is that "Ronald saw me on 4/19/2010 and informed me that he is unable to work because he has been diagnosed with a tumor in his arm that will require extensive ...." (Tr. 707). That lone comment suggests that Dr. Gleason based his opinion on the plaintiff's physical condition, not his mental status. In all events, the conclusory nature of the opinion is, by itself, sufficient basis to discount it. Lewis v. Callahan, supra.

Next, the plaintiff suggests that the law judge improperly relied on the opinions of the nonexamining reviewing psychologists, Dr. James Levasseur and Dr. Keith Bauer (Doc. 15, p. 9). Specifically, the plaintiff complains that "neither of these evaluators seemed to consider Dr. Gleason's ... medical opinion (in any event, neither of them acknowledge Dr. Gleason's opinion or explained their contrary opinion in light of it)" (id.).

There was really nothing about Dr. Gleason's opinion for the psychologists to discuss since it consisted merely of a check-mark. Significantly, the psychologists, unlike Dr. Gleason, explained their

-12-

conclusions that the plaintiff had only a mild limitation in social functioning and, in doing so, referred to treatment by Dr. Gleason (Tr. 474, 506).

In all events, the reports of nonexamining reviewing physicians may be credited over the opinion of a treating physician when good cause is stated for discounting the treating physician's opinion. See Jones v. Bowen, 810 F.2d 1001, 1005 (11th Cir. 1986); Forsyth v. Commissioner of Social Sec., 503 Fed. Appx. 892, 893 (11th Cir. 2013) (law judge stated good cause to afford more weight to the opinion of a nonexamining physician than to the opinion of the treating physician). As discussed above, the law judge stated good cause for giving little weight to Dr. Gleason's opinion regarding social functioning. In addition, the law judge found the opinions of the nonexamining reviewers to be "consistent with the medical record as a whole" (Tr. 24). Therefore, the law judge could appropriately afford these opinions great weight.

The plaintiff argues that "no GAF [Global Assessment of Functioning] score reported in this record is consistent with the ALJ['s] ...

-13-

finding of *mild* limitations" (Doc. 15, p. 10) (emphasis in original).[4]  This
assertion is incorrect.  Thus, in October 2010, Dr. Gleason assessed the
plaintiff with a GAF score of 64 (Tr. 849), which reflected only "[s]ome mild
symptoms ... OR some difficulty in social, occupational, or school functioning
..., but generally functioning pretty well, has some meaningful interpersonal
relationships." Diagnostic and Statistical Manual of Mental Disorders, (DSM-
IV-TR) (4th ed., Text Revision), p. 34.

        Regardless, the plaintiff's reliance on his GAF scores is
unavailing.  As the law judge discussed (Tr. 24), the Commissioner has
declined to endorse the GAF scale for use in the Social Security program.
Wind v. Barnhart, 133 Fed. Appx. 684, 692 n.5 (11th Cir. 2005).  The
Commissioner's position seems to have been well-taken because the GAF
scale has been abandoned by the American Psychiatric Association.
Diagnostic and Statistical Manual of Mental Disorders, (DSM-5) (5th ed.,
2013), p. 16.

_____

        [4]The GAF scale "[c]onsider[s] psychological, social, and occupational functioning
on a hypothetical continuum of mental health-illness." Diagnostic and Statistical Manual
of Mental Disorders, (DSM-IV-TR) (4th ed., Text Revision), p. 34.

Finally, the plaintiff contends that the law judge did not consider his impairments in combination (Doc. 15, p. 10). However, the law judge acknowledged that she had to consider the combined effects of the plaintiff's impairments (Tr. 20). Moreover, the law judge found that the plaintiff had several severe impairments (Tr. 21), and she clearly considered the combined effects of those impairments in determining the plaintiff's residual functional capacity (Tr. 25).

As a second issue, the plaintiff argues that, "[e]ven assuming the correctness of the ALJ's findings with respect to nonsevere mental impairments, [s]he failed to adhere to plainly stated Agency policy and thus erred as a matter of law when [s]he failed to consider the effect of Mr. Sprague's 'mild' limitations in activities of daily living, social functioning, and concentration, persistence [or] pace when forming h[er] RFC finding" (Doc. 15, p. 11). The thrust of this argument is that, although the plaintiff had mild limitations in these areas, he had some limitations and those limitations should have been included in the residual functional capacity determination because that determination requires consideration of both severe and nonsevere impairments. The law judge, however, expressly articulated in her

-15-

decision the governing principles and, applying those principles, concluded that the plaintiff did not have any functional limitations from his mental impairments.

For the purpose of this argument, the plaintiff accepts the finding that the plaintiff's mental impairments were nonsevere. That means that the impairments have no more than a minimal limitation on the plaintiff's ability to do basic work activities. 20 C.F.R. 404.1520a(d)(1), 416.920a(d)(1); see also Brady v. Heckler, supra. Consequently, in many, if not most cases, there will be no functional limitations from a nonsevere impairment.

Here, the plaintiff asserts that, because the law judge found that the plaintiff had mild limitations in activities of daily living, social functioning, and concentration, persistence or pace, he had some functional limitations and those should have been included in the plaintiff's residual functional capacity. The plaintiff reads more into a finding of a mild limitation than is warranted. Under the regulations, the law judge only had relevant choices of "none," "mild" or "moderate." 20 C.F.R. 404.1520a(c)(4), 416.920a(c)(4). Thus, a finding of "mild" is not a nuanced one.

However, the law judge expressly found more specifically that the plaintiff's mental impairments "do not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and are therefore nonsevere" (Tr. 22). To iterate, the Eleventh Circuit has said that a nonsevere impairment "has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." Brady v. Heckler, supra, 724 F.2d at 920. Thus, the plaintiff's assertion that the "mild" findings meant he had some mental functional limitation is unpersuasive.

Significantly, the law judge recognized that in determining the residual functional capacity she had to "consider all of the claimant's impairments, including impairments that are not severe" (Tr. 20). Further, after discussing the four broad functional areas, the law judge stated (Tr. 24):

> The limitations identified in the "paragraph B" criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found

in paragraph B of the adult mental disorders listings in 12.00 of the Listing of Impairments (SSR 96-8p). Therefore, the following residual functional capacity assessment reflects the degree of limitation the undersigned has found in the "paragraph B" mental function analysis.

In the residual functional capacity finding, the law judge did not include any functional limitations relating to a mental impairment. This demonstrates that the law judge concluded that the plaintiff did not have any functional limitations from his nonsevere mental impairments. This conclusion is supported by substantial evidence, is based on a proper application of the governing legal principles, and is reasonable.

It is, therefore, upon consideration

ORDERED:

That the decision of the Commissioner of Social Security is hereby **AFFIRMED**. The Clerk shall enter judgment in accordance with this Order and **CLOSE** this case.

DONE and ORDERED at Tampa, Florida, this 9ᵗʰ day of June, 2014.

THOMAS G. WILSON
UNITED STATES MAGISTRATE JUDGE

-18-